UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| v. | 13-MJ-555 (MWP) |
| TERRANCE JUNOT III, | DEFENDANT'S MOTION TO REVOKE OR AMEND THE DETENTION ORDER |
| Defendant. | |

_____

| | |
|---|---|
| **MOTION BY**: | Jeffrey L. Ciccone, Assistant Federal Public Defender, Attorney for Terrance Junot III. |
| **SUPPORTING PAPERS**: | Affirmation of Jeffrey L. Ciccone, affirmed on April 2, 2013. |
| **RELIEF REQUESTED**: | An Order revoking or amending the Magistrate Judge's decision to detain Mr. Junot. |

Dated:    April 2, 2013
          Rochester, New York

                            /s/Jeffrey L. Ciccone
                            Jeffrey L. Ciccone
                            Assistant Federal Public Defender
                            28 E. Main Street, Suite 400
                            Rochester, New York 14614
                            585-263-6201
                            jeffrey_ciccone@fd.org
                            Attorney for Terrance Junot III

TO:    Craig Gestring, AUSA

AO 72A
(Rev. 8/82)

UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA           13-MJ-555 (JWF)

      v.           AFFIRMATION

TERRANCE JUNOT III,

      **Defendant.**

---

      Jeffrey L. Ciccone, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

      1.     I am an attorney licensed to practice law in the State of New York and in the United States District Court for the Western District of New York, and I represent the defendant, Terrance Junot.

      2.     I am familiar with this case by reason of my investigation of this matter, conversations with my client and others, and my review of the discovery materials provided to date by the government.

      3.     This affirmation is submitted in support of a request for release on pretrial conditions, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

## **INDEX**

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. MOTION TO REVOKE DETENTION ORDER. . . . . . . . . . . . . . . . . . . . . . . 3

III. RESERVATION OF RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

AO 72A
(Rev. 8/82)

## I. INTRODUCTION

4. Pursuant to 18 U.S.C. § 3145(b), defendant Terrance Junot III moves this Court for a revocation or amendment of the Magistrate Judge's Order of Detention, dated March 25, 2013. Mr. Junot requests that this Court conduct a *de novo* review, revoke the Magistrate Judge's detention order, and set reasonable conditions of release.

## II. MOTION TO REVOKE THE DETENTION ORDER

5. Mr. Junot was accused in a Criminal Complaint filed on March 22, 2013, alleging that he enticed a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251. (Docket #1).

6. According to the Criminal Complaint, the investigation of this matter began on March 16, 2013, when a resident of the town of Greece, New York (identified as Cooperating Witness #1 [CW1]) reported to the police that she had looked at the cellular telephone of her thirteen-year-old daughter (identified as Cooperating Witness #2 [CW2]) and observed numerous sexual text messages and explicit photographs. The text messages and photographs were allegedly part of a series of electronic communications between Mr. Junot and CW2.

AO 72A
(Rev. 8/82)

7. On March 21, 2013, agents interviewed Mr. Junot at his parents' residence in Greece, New York. He was not, however, arrested on that date. The following morning, the agents called Mr. Junot, advised him that he was being charged and instructed him to report to the Greece Police Department. Mr. Junot voluntarily reported as directed and was arrested without incident.

## DETENTION HEARING

8. The government moved for Mr. Junot's pretrial detention of grounds of both risk of flight and dangerousness. United States Magistrate Judge Jonathan W. Feldman presided over a detention hearing, which was conducted on March 25, 2013. The government chose not to call any witnesses and proceeded by proffer. The defense also proceeded by proffer.

9. The government argued that Mr. Junot was a risk of flight because he is not married and does not have children in Rochester, and because, despite that he works full-time as an automotive mechanic, he does not have a career the government believes to be a significant tie to the local area. Magistrate Judge Feldman denied the government's motion as to risk of flight.

10. The government's arguments in support of its motion for detention based on dangerousness focused almost exclusively on three areas. First, the government addressed the unproven facts of the case, arguing that the strength of the

case against Mr. Junot justifies his pretrial detention. Second, the government addressed Mr. Junot's limited criminal history. Finally, the government argues that Mr. Junot presents a danger to the community because a public playground is visible from the backyard of his residence.

11. The defendant countered the government's request for detention. The defense proposed conditions of release that would reasonably assure the safety of the community and Mr. Junot's return to court. These reasonable conditions included releasing Mr. Junot to reside at his parents' residence and placing him on the electronic monitoring system (EMS). Mr. Junot also indicated a willingness to quit his job at the bowling alley, if that caused concern for the Court. Finally, as noted in the Pretrial Services Report, Mr. Junot's parents have expressed a willingness to post property on their son's behalf.

12. Magistrate Judge Feldman rejected the conditions proposed by the defense. The Court granted the government's motion for detention as to dangerousness, citing, almost exclusively, the facts alleged in the Criminal Complaint.

ARGUMENT

13. The Bail Reform Act of 1984 limits a federal judge's ability to detain a defendant without bail. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481

U.S. 739, 755 (1987). When faced with a government motion for pretrial detention, the Court must conduct a two part inquiry: is the defendant a danger to the community or a serious risk of flight, and, if so, are there conditions or a combination of conditions that will reasonably assure the safety of the community or the person's presence at trial.

  14. Pursuant to 18 U.S.C. § 3145(b), Mr. Junot moves for revocation or amendment of Magistrate Judge Feldman's order that he be held without bail. Section 3145(b) provides that, "[i]f a person is ordered detained by a magistrate . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The district court should fully reconsider a magistrate's denial of bail, not simply defer to the magistrate's judgment. The district court must reach its own independent conclusion. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). The standard of review is *de novo*. *See, United States v. Goba*, 240 F. Supp.2d 242, 245 (WDNY 2003), *Leon*, 766 F.2d at 80. Such review requires that the court "give fresh consideration to those issues to which specific objections have been made. . . ." *United States v. Raddatz*, 447 U.S. 667, 675 (1980). The district court will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions. *See id*.

AO 72A
(Rev. 8/82)

15. <u>Strength of the Government's Case</u>: At the conclusion of the detention hearing, Magistrate Judge Feldman found that there were no conditions or combination of conditions that would ensure the safety of the community. He thus ordered that Mr. Junot be detained pending trial. Based upon the reasons articulated by Judge Feldman, it appears that his decision was primarily based upon what he considered to be the strength of the government's case.

16. The Bail Reform Act of 1984 specifies the various factors that the Court must consider in determining whether conditions of release exist that will reasonably ensure the safety of the community and a person's appearance in court. These factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse; and criminal history; (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. 3142(g). "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citations omitted).

17. Despite that the weight of the evidence is the least important factor, Magistrate Judge Feldman appears to have relied upon it to the exclusion of all others. Although serious, the charges against Mr. Junot allege a texting relationship

AO 72A
(Rev. 8/82)

with a single person, CW2.  No evidence was presented to suggest that Mr. Junot communicated with any other individuals.  Conversely, as the defense presented, Mr. Junot has strong family ties to the Rochester community.  His parents live in Greece, New York and have expressed their willingness to allow Mr. Junot to continue to live in their home, as well as post their property if required to do so.  Additionally, Mr. Junot is employed as a full-time automotive mechanic and works part-time at a local bowling alley in order to earn extra income on the weekends.

      18.    To the extent the government relied upon text messages between Mr. Junot and CW2 suggesting that they were planning to meet in person for illicit purposes, such text messages appear to have been taken out of context.  As stated above, Mr. Junot works part-time at a local bowling alley.  Mr. Junot's family and CW2's family were all participants in a bowling league at that bowling alley.  Any text messages between Mr. Junot and CW2 stating that they would see each other later, were likely merely references to upcoming scheduled bowling matches.

      19.    Given Mr. Junot's ties to the local community and employment history, there are clearly conditions or a combination of conditions that would ensure the safety of the community.  As stated above, Mr. Junot's parents are willing and ready to post their property on behalf of their son.  They have also arranged to have a telephone line installed in their home for purposes of the EMS system.  Mr. Junot is willing to surrender his cellular telephone and abide by any condition prohibiting him

AO 72A
(Rev. 8/82)

from using text messaging. The EMS system can also be used to ensure that Mr. Junot is in his residence whenever he is not scheduled to work. Such a set of conditions surely would be sufficient to ensure the community's safety.

20. <u>Mr. Junot's Criminal History Is Minimal</u>: Mr. Junot's limited criminal history consists of two misdemeanor convictions from over 15 years ago. The second of the two convictions was resolved with a sentence of a $100 fine. For the other conviction, Mr. Junot received a sentence of three years probation. Due to his compliance with the terms of that probation, Mr. Junot was discharged after only one year. Thus, there is strong reason to believe that Mr. Junot will be able to comply with any release conditions set by this Court.

21. <u>View of a Playground</u>: As part of its final argument for detention, the government presented a satellite map of Mr. Junot's parents' residence. According to the map, there is a barrier of trees along the rear property line. On the other side of the trees is a field. At the far end of the field is a school playground. The government contends that the possibility that the playground can be viewed from Mr. Junot's residence renders his parents' home unsuitable for possible release.

22. Without conceding the unsuitability of their residence, Mr. Junot's parents have made arrangements with a family friend for Mr. Junot to live in their

9

Case 6:13-mj-06002-FPG Document 1 Filed 04/03/13 Page 11 of 12

vacant residence. The defense will present the address to the United States Probation Office so they can determine whether it is a suitable alternative.

23. For the above-stated reasons, this Court should revoke Magistrate Judge Feldman's order of detention and order Mr. Junot's release on reasonable conditions, including Pretrial Supervision with electronic monitoring supervision requiring Mr. Junot reside in the WDNY pending resolution of the Indictment.

### III.  RESERVATION OF RIGHTS

24. Mr. Junot respectfully requests the opportunity to supplement this pleading should the government's response raise additional issues of fact or law not sufficiently addressed herein.

Dated:     April 2, 2013

                                         /s/Jeffrey L. Ciccone
                                         Jeffrey L. Ciccone
                                         Assistant Federal Public Defender
                                         Federal Public Defender's Office
                                         28 E. Main Street, Suite 400
                                         Rochester, New York 14614
                                         (585)263-6201
                                         jeffrey_ciccone@fd.org
                                         Attorney for Terrance Junot III

To:  Craig Gestring, AUSA

AO 72A
(Rev. 8/82)

UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

     v.                                                               13-MJ-555 (MWP)

TERRANCE JUNOT III,

                **Defendant.**
_____

## CERTIFICATE OF SERVICE

     I hereby certify that on April 2, 2013, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

     1.     Craig Gestring, AUSA – craig.gestring@usdoj.gov

     And, I hereby certify that I have emailed the document to the following non-CM/ECF participant(s).

                                                                   /s/Judith M. Middleton
                                              Judith M. Middleton
                                              Federal Public Defender's Office
                                              28 E. Main Street, Suite 400
                                              Rochester, New York 14614
                                              585-263-6201

11

AO 72A
(Rev. 8/82)